## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

ELECTRONIC PRIVACY                )
INFORMATION CENTER               )
                                                  )
    Appellant,                         )
                                                  )
    v.                                       )      No. 13-5114
                                                  )
TRANSPORTATION SECURITY   )
ADMINISTRATION                       )
                                                  )
    Appellee.                           )
_____)

## COPY OF THE UNDERLYING DECISION FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Respectfully submitted,
_____*/s/ Marc Rotenberg*_____
MARC ROTENBERG
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, D.C. 20009
(202) 483-1140
*Counsel for Appellant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ) | |
| **ELECTRONIC PRIVACY** ) | |
| **INFORMATION CENTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 11-290 (RCL)** |
| ) | |
| **TRANSPORTATION SECURITY** ) | |
| **ADMINISTRATION** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

This action concerns two Freedom of Information Act ("FOIA") requests by the Electronic Privacy Information Center ("EPIC") for records held by the Transportation Security Administration ("TSA"). The parties have filed cross-motions for Summary Judgment. ECF Nos. 13 & 14. The Court will GRANT in part and DENY in part both motions. TSA is entitled to summary judgment as to all of its withholdings pursuant to exemptions 3, 4, and 6, and all withholdings pursuant to exemption 5 except for a PowerPoint shared with a Congressional Committee, which TSA must disclose.

I.      **BACKGROUND**

Starting in 2005, the TSA began using full-body scanning machines in U.S. airports to screen travelers on U.S. commercial aircraft. Pl.'s Statement of Material Facts ¶ 2, ECF No. 14-2.[1] In 2010 the TSA decided to make Advanced Imaging Technology scanners the primary method of screening passengers. Def.'s Br. 2, ECF No. 13. These machines capture detailed,

---

[1] TSA does not dispute any of the facts contained in this statement. Def.'s Response to Pl.'s Statement, ECF No. 17-1.

three-dimensional images of individuals and transmit them for review by Transportation Security

Officers.   Pl.'s Statement ¶ 3.   In response to concerns about protecting the privacy of

passengers, including concerns raised by EPIC, the TSA began researching and testing

Automated Target Recognition ("ATR") software updates for these machines.   *Id.* ¶¶ 4–10.

According to the TSA, "[r]ather than having a [security officer] view a passenger-specific image,

scanners utilizing [ATR] software auto-detect potential threat items and indicate their location on

a generic outline of a person."  Def.'s Br. 2.

In June 2010, EPIC submitted a FOIA Request to the TSA seeking a variety of

information about the development and implementation of ATR technology and seeking a waiver

of the duplication fees pursuant to its status as a "representative of the news media."  FOIA

Request, Jun. 15, 2010 ("FOIA Request 1"), ECF Nos. 13-2, 14-5.  EPIC requested the following

documents:

1) All specifications provided by TSA to automated target recognition manufacturers
   concerning automated target recognition systems.

2) All records concerning the capabilities, operational effectiveness, or suitability of
   automated target recognition systems, as described in [Department of Homeland
   Security] Secretary [Janet] Napolitano's letter to Senator [Susan] Collins.[2]

3) All records provided to TSA from the Dutch government concerning automated
   target recognition systems deployed in Schiphol Airport, as described by
   Secretary Napolitano's letter to Senator Collins.

4) All records evaluating the [full body scanner] program and determining
   automated target recognition requirements for nationwide deployment, as
   described in Secretary Napolitano's letter to Senator Collins.

*See* FOIA Request 1 at 2.  TSA acknowledged receipt of the request and stated that duplication

fees would apply.  TSA Resp. to EPIC's FOIA Request 1, Jun. 24, 2010, ECF No. 14-6.  In

---

[2] This letter, which included details about the TSA's timetable for ATR deployment, was disclosed by TSA in
response to a separate April 2010 petition filed by EPIC and other organizations seeking suspension of the entire full
body scanner program.  *See* Pl.'s Br. 2, ECF No. 14-1.

October 2010, EPIC filed an administrative appeal based on TSA's failure to disclose records and its denial of the fee-waiver.  EPIC's FOIA Appeal 1, Oct. 5, 2010, ECF No. 14-7.

EPIC submitted a second FOIA Request ("EPIC's Second FOIA Request") to the Department of Homeland Security ("DHS") seeking additional information about ATR and again requesting waiver of duplication fees.  *See* FOIA Request 2, Oct. 5, 2010, ECF Nos. 13-3, 14-10. Specifically, EPIC requested the following information:

1) All records provided from L3 Communications or Rapiscan[3] in support of the submission or certification of ATR software modifications;

2) All contracts, contract amendments, or statements of work related to the submission or certification of ATR software modifications;

3) All information, including results, of government testing of ATR technology, as referenced by Greg Soule of the TSA in an e-mail to Bloomberg News, published September 8, 2010.

FOIA Request 2 at 3–4.  DHS referred the request to TSA, ECF No. 14-11, who assigned it a reference number, and denied EPIC's request to waive duplication fees.  TSA Response to EPIC's FOIA Request 2, Nov. 8, 2010, ECF No. 14-12.   In December, EPIC filed an administrative appeal based on TSA's failure to disclose records and its denial of the requested fee-waiver.  EPIC's FOIA Appeal 2, Dec. 14, 2010, ECF No. 14-13.

EPIC filed this action in February 2011, alleging that TSA had "failed to disclose a single record" and "failed to comply with agency deadlines under the FOIA."  Compl. ¶¶ 4, 46–48, 64–66, ECF No. 1.

Several months later, TSA released hundreds of pages of records responsive to EPIC's requests and stated that they had withheld and redacted information pursuant to FOIA exemptions 3, 4, 5, and 6.  Def.'s Statement ¶¶ 13–17; *Vaughn* index, ECF No. 13-4.   EPIC

---

[3] L3 Communications and Rapiscan are the two private vendors who developed and manufactured AIT scanners. Def.'s Br. 2.

challenges some of these withholdings, but notably it also claims it has already "substantially prevailed" in the case by obtaining these documents.  Pl.'s Opp'n 21.

## II.    LEGAL STANDARD

The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to make certain records publicly available.   FOIA also provides exemptions from the disclosure requirement, which are to be "narrowly construed."  *FBI v. Abramson*, 456 U.S. 615, 630 (1982). Four of these, exemptions 3, 4, 5, and 6, are relevant to this case and are described in greater detail below.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  FOIA actions are typically and appropriately resolved on summary judgment.  *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also COMPTEL v. FCC*, 06-cv-1718, 2012 WL 6604528, *4 (D.D.C. Dec. 19, 2012).

The agency bears the burden in litigation to justify withholding any records.  5 U.S.C. § 552(a)(4).  This is in part because of the "strong presumption in favor of disclosure," *U.S. Dep't. of State v. Ray*, 502 U.S. 164, 173 (1991), and because FOIA requesters face an information asymmetry given that the agency possesses the requested information and decides whether it should be withheld or disclosed. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006). Thus, even where the requester has moved for summary judgment, the Government "ultimately has the onus of proving that the documents are exempt from disclosure." *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (internal quotations and modifications omitted); *see also COMPTEL*, 2012 WL 6604528 at *4.

4

To satisfy its burden, an agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools.  A *Vaughn* index correlates each withheld document, or portion thereof, with a particular FOIA exemption and the justification for nondisclosure.  *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  While agency affidavits are accorded a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), they must "provide[] a relatively detailed justification, specifically identify[ing] the reasons why a particular Exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Judicial Watch v. FDA*, 449 F.3d at 146; *see also COMPTEL*, 2012 WL 6604528 at *4.

## III.   EPIC HAS CONCEDED THE ADEQUACY OF TSA'S SEARCH FOR RESPONSIVE DOCUMENTS AND THE PROPRIETY OF ITS WITHHOLDINGS PURSUANT TO EXEMPTIONS 4 AND 6

TSA has moved for summary judgment as to the adequacy of its search for responsive documents, Def.'s Br. 9–11, and the appropriateness of its withholdings. *See* Def.'s Br. 18–25, 28–31.  EPIC does not contest the adequacy of TSA's search or the propriety of its withholdings pursuant to exemptions 4 or 6.  *See* Pl.'s Opp'n.  Accordingly, the Court takes these issues as conceded and grants summary judgment to TSA as to all withholdings made under exemptions 4 and 6 as indicated in the *Vaughn* Index.

## IV.   TSA IS ENTITLED TO SUMMARY JUDGMENT AS TO ITS EXEMPTION 3 WITHHOLDINGS

Both parties move for summary judgment as to withholdings made by TSA pursuant to exemption 3.  TSA is entitled to summary judgment as to these withholdings.

Exemption 3 permits the nondisclosure of materials that are "specifically exempted from disclosure by statute" so long as that statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii).  Congress

5

amended exemption 3, adding language requiring "particular criteria for withholding" in order
"to overrule legislatively the Supreme Court's decision in *Administrator, FAA v. Robertson*, 422
U.S. 255 (1975), which had given an expansive reading to the version of Exemption 3 then in
force."[4]  *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C. Cir. 1979).   Only statutes that
"incorporate[] a formula whereby the administrator may determine precisely whether disclosure
in any instance would pose the hazard" from disclosure that the provision was intended to protect
against will qualify under exemption 3.  *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 628–29 (D.C.
Cir. 1978).   Statutes that merely "set forth benchmarks for secrecy so general as the 'interest of
the public' (such as the statute at issue in *Robertson*) do not satisfy . . . [the] 'particular criteria'
requirement." *Wis. Project on Nuclear Arms Control v. U.S. Dep't of Commerce*, 317 F.3d 275,
280–81 (D.C. Cir. 2003) (quoting *Am. Jewish Cong.*, 574 F.2d at 629).  But when "on the other
hand, Congress has made plain its concern with a specific effect of publicity . . . Exemption 3 is
to honor that concern."  *Id.*

> Section 114(r) of Title 49 provides:
>
> Notwithstanding section 552 of title 5, the Under Secretary shall prescribe
> regulations prohibiting the disclosure of information obtained or developed in
> carrying out security under authority of the Aviation and Transportation Security
> Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary
> decides that disclosing the information would . . . be detrimental to the security of
> transportation.

49 U.S.C. § 114(r), (r)(C).   Pursuant to that authority, TSA promulgated regulations that
expressly prohibit the disclosure of certain categories of sensitive security information.  *See
generally* 49 C.F.R. pt. 1520.

---

[4] *Robertson* upheld an exemption 3 claim based on a pre-FOIA statute which barred disclosure of information that
would "adversely affect" the agency and was "not required to be disclosed in the interest of the public."  422 U.S. at
259.

Judge Kollar-Kotelly has held that § 114(r) qualifies as a "statute of Exemption as contemplated by Exemption 3." *Tooley v. Bush*, 06-cv-306, 2006 WL 3783142, *4 (D.D.C. Dec. 21, 2006) *rev'd in part on other grounds sub nom. Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009). Her conclusion rested on a D.C. Circuit decision which interpreted a provision containing nearly identical language to § 114(r). *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 194 (D.C. Cir. 1993). The *Public Citizen* court examined withholdings made pursuant to the following provision:

> Notwithstanding section 552 of Title 5 relating to freedom of information, the [FAA] Administrator shall prescribe such regulations as he may deem necessary to prohibit disclosure of any information obtained or developed in the conduct of security or research and development activities under this subsection if, in the opinion of the Administrator, the disclosure of such information . . . (C) would be detrimental to the safety of persons traveling in air transportation.

*Pub. Citizen*, 988 F.2d at 189 (quoting 49 U.S.C. § 1357(d)(2) (1993) (subsequently recodified at 49 U.S.C. § 40119(b)). The Circuit concluded that the provision granted the agency authority to "withhold security-sensitive information from members of the public, regardless of the legal basis of the request for the information," including FOIA *Id.* at 195–96. The Circuit explained that Congress added the "notwithstanding" language to ensure that the statute qualified under FOIA's exemption 3.[5] *Id.* at 195.

This Court agrees with Judge Kollar-Kotelly. Because section 114(r) contains virtually identical language to the provision in *Public Citizen*, particularly the "notwithstanding" language, the Circuit's analysis is equally applicable to section 114(r), and that provision must also qualify under exemption 3.

---

[5] This belies EPIC's charges that the *Public Citizen* court "does not . . . resolve the question of whether the statute at issue in that case, 49 U.S.C. § 1357(d)(2), qualifies as an exemption 3 statute," and the Court did "not engage in an exemption 3 analysis at all." *See* Pl.'s Reply 3, ECF No. 18.

Judicial review of TSA's determination that certain material is nondisclosable security sensitive information is available exclusively in federal circuit courts. *See* 49 U.S.C. § 46110(a) ("[A] person disclosing a substantial interest in an order issued . . . in whole or in part under . . . subsection . . . (s) of section 114[6] may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."); *id.* § 46110(c) (describing the prescribed jurisdiction as "exclusive"); *see also Koutny v. Martin,* 530 F. Supp. 2d 84, 91 (D.D.C. 2007) ("A remedy to challenge a final TSA classification order is provided by statute. An interested party may petition to modify or set aside such an order in an appropriate court of appeals." (citing § 46110(a))). Accordingly, district courts may not review orders of TSA that designate material as security sensitive information. *See Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77–78 (D.C. Cir. 1984) ("[W]here a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals.").

Here, TSA has withheld information designated as security sensitive pursuant to § 114(r). Because the Court lacks jurisdiction to review the merits of the specific withholdings made pursuant to that provision, *see* 49 U.S.C. § 46110(a), (c), the legal conclusion that § 114(r) qualifies for exemption 3 withholding takes this Court as far as it can go here. TSA is entitled to summary judgment on its withholding of the material designated as security sensitive information.

---

[6] Subsection (s) of section 114 formerly authorized TSA to prohibit the disclosure of certain material found to be detrimental to the security of transportation; in 2007, this subsection was redesignated as § 114(r). Pub. L. 110–161 § 568, Dec. 26, 2007, 121 Stat. 1844. Section 46110(a) has not yet been updated to reflect this clerical change.

## V.     BOTH EPIC AND TSA ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO TSA'S EXEMPTION 5 WITHHOLDINGS

Both parties move for summary judgment as to the legality of withholdings made by TSA pursuant to FOIA's exemption 5.[7]  EPIC is entitled to summary judgment as to the TSA's exemption 5 withholdings within a PowerPoint shared with a Congressional Committee.  TSA is entitled to summary judgment as to all other exemption 5 withholdings.

FOIA's exemption 5 permits the non-disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  One such privilege is the "deliberative process privilege," which "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  A document is predecisional if "it was generated before the adoption of an agency policy" and deliberative if "it reflects the give-and-take of the consultative process." *Id.*   The deliberative process protection covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Klamath*, 532 U.S. at 8.  The general purpose of the deliberative process privilege is "to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)

EPIC only challenges TSA's exemption 5 withholdings made by TSA in three sets of documents: (1) a PowerPoint presentation provided to a Congressional Committee, Bates

---

[7] EPIC only moves for summary judgment as to a small subset of these withholdings, as discussed below.  This Court will enter summary judgment in favor of TSA on all exemption 5 withholdings not challenged by EPIC.

Numbers 404–421, *see* Pl.'s Opp'n 14; Soutodeh Supp. Decl. ¶¶ 4–11; (2) a letter of assessment

and other intra-agency memoranda regarding ATR testing results and recommendations, Bates

Numbers 463–483, *see* Pl.'s Opp'n 18; Soutodeh Decl. ¶ 39; and (3) an intra-agency Operational

Test Plan and Operational Test and Evaluation the ATR program, Bates Numbers 484–617, *see*

*see* Pl.'s Opp'n 18.  The Court will discuss each of these documents in turn.

### A.  The PowerPoint Was Improperly Redacted

The first contested document, Bates Numbers 404–421, is a "PowerPoint presentation

prepared by TSA's Office of Security Technology (OST) and presented in a briefing to the

House Appropriations Committee in connection with future funding for ATR."  Soutodeh Decl. ¶

36, ECF No. 13-1.  The TSA's declaration indicates that the presentation was "provided" to the

Committee.  Soutodeh Supp. Decl. ¶ 3.

TSA made five withholdings from this document pursuant to exemption 5:

**TABLE 1**

| BATES NUMBER | DESCRIPTION FROM *VAUGHN* INDEX[8] | PAGES WITHHELD |
|---|---|---|
| 411–412 | Detailed description of key threat detection performance parameters and performance | 2 pages partially withheld |
| 413 | Chart measuring operational availability [a]nd passenger thoughput | 1 page partially withheld |
| 414 | Measurement of passenger throughput | 1 page partially withheld |
| 415–417 | Letter of Assessment findings and conclusions pertaining to future use of ATR; security and policy discussion of "next steps" for ATR; and description of future testing operations at three airports | 3 pages partially withheld |
| 418–420 | Future budget and purchase projections; Future procurement schedule and deployment goals | 3 pages partially withheld |

---

[8] All descriptions are direct quotations from the *Vaughn* Index.

The question is whether such a document, once provided to Congress, may be eligible for protection under exemption 5.   The Court finds that the document is not eligible for this protection and must be disclosed.

Congress is not an "agency" for purposes of the FOIA.  *See* 5 U.S.C. § 551(1)(A).  This suggests that documents shared with Congress should not qualify under exemption 5, which is limited to intra-agency and inter-agency documents.  But, notably, Congress also expressly noted in the FOIA statute that "[t]his section is not authority to withhold information from Congress." § 552(d).  This provision arguably implies that Congress intended to permit agencies to freely share information with Congress without thereby incurring the consequence of being forced to disclose that document more broadly.  *See Murphy v. Dep't of the Army*, 613 F.2d 1151, 1156 (D.C. Cir. 1979).

The D.C. Circuit has held that "communications between an agency and Congress [may] receive protection as intra-agency memoranda if they [a]re 'part and parcel of *the agency's* deliberative process,'" but may not receive this protection if "created specifically to assist Congress" and shared "for the sole purpose of assisting [a] Committee with its deliberations." *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001) (quoting and citing *Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 574–75 (D.C. Cir. 1990)); *see also Dow Jones*, 917 F.2d at 574 ("It may well be true that if Congress had thought about this question, the Exemption would have been drafted more broadly to include Executive Branch communications to Congress . . . . But Congress did not, and the words simply will not stretch to cover this situation, because Congress is simply not an agency.").

For instance, in *Rockwell International Co.*, the Circuit held that documents provided by the Justice Department to a congressional subcommittee were eligible for exemption 5 protection

where the documents were not "created specifically to assist Congress, but rather memoranda and correspondence created as part of the Justice Department's deliberative processes" and where the Department "gave the documents to the Subcommittee only after the Subcommittee expressly agreed not to make them public." 235 F.3d at 604.  In *Ryan v. Dep't of Justice*, the Circuit held that questionaires sent by the Justice Department to senators were still protected by exemption 5 where the documents were designed to collect information to assist the agency's internal deliberations.  617 F.2d 781, 789–90 (D.C. Cir. 1980).  And earlier, in *Murphy v. Department of the Army*, the Circuit held that a document disclosed by the Army to a congressman was protected under exemption 5 even where the army did not actively condition disclosure on confidentiality.  613 F.2d at 1156 (citing § 552(c), which later became § 552(d), and which provides that FOIA is not "authority to withhold information from Congress").

In contrast, in *Dow Jones*, the Circuit held that a Department of Justice letter submitted to the Chairman of the House Ethics Committee was not eligible for exemption 5 protection because "the Department had unquestionably ended its consideration" on the issue in question "before it sent the letter to Congress," so that the letter could not be considered "part and parcel of the agency's deliberative process." 917 F.2d at 575.

Under these principles, the PowerPoint may not be protected by Exemption 5.  First, and most importantly, the document was assembled and presented to assist the Appropriations Committee in its own funding determinations.  *See* Pl.'s Opp'n 15; Pl.'s Reply 6–7.  Second, there was apparently no express agreement by the Committee that the material would remain confidential, unlike in *Rockwell*.  Third, unlike the surveys in *Ryan*, there was no apparent information-*gathering* purpose to this document.

It is true that the PowerPoint was generated at least in part out of existing intra-agency documents. *See* Soutodeh Supp. Decl. ¶¶ 4–6.  And, like *Rockwell* and unlike *Dow Jones*, the documents were merely "preliminary agency opinions" rather than articulations of a final decision.  Def.'s Opp'n 13.  However, these arguments do not undermine the main conclusion: this document was prepared to assist with Congressional deliberations rather than agency deliberations.  Moreover, in FOIA actions, the agency bears the burden in litigation to justify withholding any records.  5 U.S.C. § 552(a)(4).  The Agency has failed to meet its burden, and the PowerPoint is not eligible for protection under exemption 5.  Accordingly, EPIC is entitled to summary judgment as to these claims, and the Court will order TSA to disclose any material withheld pursuant to exemption 5 from the PowerPoint that was not also withheld pursuant to exemption 3, *compare Vaughn* Index 10, *with id.* at 9, or later designated as security sensitive information, *see* Sotoudeh Supp. Decl. ¶¶ 8–9, and which has not already been disclosed by the agency, *see id.* at ¶¶ 7, 11.[9]

### B.  The Letter of Assessment and Other ATR Memoranda Were Properly Redacted

Next, several ATR memoranda raise the same issues and are properly dealt with as a class.  First, Bates Numbers 463–76 is a memorandum "prepared by OST and used to brief the

---

[9] The *Vaughn* index indicates that the first four withholdings listed in the table above, Bates Numbers 411–12, 413, 414, 415–17, were also withheld under exemption 3, but does not provide adequate specificity to determine whether the overlap is partial or complete.  *Compare Vaughn* Index 10, *with id.* at 9.  The Court has granted summary judgment to TSA on all of its exemption 3 withholdings, and thus will not order TSA to produce materials redacted pursuant to both exemptions.  *See ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 620 n.2 (D.C. Cir. 2011) ("[T]he government need not prevail on both exemptions, but under the statute may refuse disclosure if the withheld records satisfy one Exemption.").  TSA also claims that more of its exemption 5 withholdings *should have* also been exemption 3 withholdings. Sotoudeh Supp. Decl. ¶¶ 8–9 ("The redacted information contained in the last bullet on bates page 000416 and in the last three bullets located on bates page 000417 . . . should have been designated as Sensitive Security Information . . . .").  As explained above, the Court lacks jurisdiction to review the agency's designation of material as security sensitive information.  *See* 49 U.S.C. § 46110(a).  The Court will treat these additional redactions as properly redacted under exemption 3.  In addition, parts of the fourth and fifth withholdings listed above, Bates Numbers 415–17, 418–20, have been subsequently disclosed by TSA.  *See* Sotoudeh Supp. Decl. ¶¶ 7, 11 (stating that TSA would disclose the first bullet redacted on page 416, the sole redaction on 418, and the Letter of Assessment findings on 415).  The Court will not Order TSA to produce any documents it has already disclosed.

DHS Undersecretary for Management in furtherance of TSA's request for authority to procure the ATR security upgrade." Soutodeh Decl. ¶ 38.  The letter was prepared for the DHS Under Secretary for Management and recommended that DHS authorize the implementation of ATR. *See* Def.'s Statement ¶ 69 (not contested in Pl.'s Statement, ECF 14-2).  Second, at Bates Numbers 478–83, are four 2011 memoranda regarding ATR testing and recommendations.  Soutodeh Decl. ¶ 39.  These include a June 6 memorandum "prepared by the Office of Security Operations (OSO) and provided to OST to convey concurrence with and comment on OST's recommendations regarding deferring some of the . . . ATR specification due dates"; a June 7 memorandum, provided to OST from OSO which "discusses qualification testing results and provides recommendations concerning those results"; a February 2011 memorandum provided to OSO from OST advancing "opinions about the testing results and mak[ing] recommendations regarding the contemplated changes to ATR qualification testing"; and a January memorandum, provided to OSO from OST discussing "qualification testing results and provid[ing] recommendations concerning those results." *Id.*

TSA made four sets of withholdings from these documents pursuant to exemption 5:

**TABLE 2**

| BATES NUMBER | DESCRIPTION FROM *VAUGHN* INDEX | PAGES WITHHELD |
|---|---|---|
| 463–464 | Discussion of analysis and thought processes of DHS office operational testing and evaluation, and follow-on recommendations for ATR program | 2 pages partially withheld |
| 466–467 | Analysis of possible implementation of ATR, including analysis of DHS's operational testing and evaluation of proposed ATR usage | 2 pages partially withheld |
| 468–475 | Analysis of ATR's compliance with specific security performance objectives; conclusions and recommendations for future testing and evaluations | 7 pages partially withheld; 1 page withheld in full |
| 478–483 | Memoranda seeking concurrence with recommendations, and making recommendations pertaining to ATR | 6 pages partially withheld. |

The issue presented is whether TSA impermissibly withheld "factual" material from this letter. Pl.'s Opp'n 18. The Court finds that TSA's withholdings were acceptable.

The D.C. Circuit has explained that "[p]urely factual material usually cannot be withheld under exemption 5 unless it reflects an exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotations and citations omitted). "Thus the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Id.*

For instance, in *Montrose Chem. Corp. of California v. Train* the Circuit held that factual summaries compiled into documents used by the administrator in the resolution of a difficult, complex question were within the protection of exemption 5, because "[t]o probe the summaries of record evidence would be the same as probing the decision-making process itself." 491 F.2d 63, 68 (D.C. Cir. 1974). Similarly, in *Mapother v. Department of Justice*, the Circuit held that factual materials included in a report were immune from disclosure where that information "was assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." 3 F.3d 1533, 1539 (D.C. Cir. 1993); *see also Ancient Coin Collectors Guild*, 641 F.3d at 513–14.

In contrast, in *Playboy Enterprises, Inc. v. Department of Justice*, the Circuit found that factual materials contained in a report were not protected because the report was "prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress." 677 F.2d 931, 936 (D.C. Cir. 1982).

Here, the parties dispute whether the withheld material is "factual." *Compare* Pl.'s Opp'n 18, *with* Table 2 (quoting the *Vaughn* Index), *and* Def.'s Opp'n 14 ("EPIC fails to identify

what material it considers to be factual."). But, even assuming some or all of the contested withholdings were factual, "the legitimacy of withholding does not turn on whether the material is purely factual in nature . . . , but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild*, 641 F.3d at 513.

Here, the Court finds that these materials are protected under exemption 5 because they were part of the agency's deliberative process. It is not contested that the purpose of these documents was to promote deliberation as to the future of the ATR program. The Letter of Assessment was written to assist in the deliberation of the DHS Undersecretary for Management regarding the implementation of ATR, and the other memoranda were similarly focused on furthering intra-agency deliberations. Soutodeh Decl. ¶¶ 38–39. The TSA's Statement of Facts Not in Genuine Dispute, the TSA declaration, and the *Vaughn* Index all describe these documents in sufficiently specific terms to demonstrate that they qualify for the privilege. *See, e.g.*, Def.'s Statement ¶¶ 69–72; Soutodeh Decl. ¶¶ 38–39; *Vaughn* Index 13–14. And EPIC has offered no reason to contest the deliberative nature of these documents.

As to the specific nature of the factual materials withheld, EPIC argues that these materials are like those found to have been wrongly withheld in *Playboy Enterprises*, rather than those properly withheld in *Montrose*. *See* Pl.'s Reply 9. But EPIC provides no reasoning to support this conclusion. Moreover, unlike *Playboy Enterprises*, the factual material here was not assembled for an agency actor merely to pass along to outsiders, but rather for purely internal deliberative purposes. *See* 677 F.2d at 636. The Court finds that the agency has provided adequately specific descriptions of its withholdings to demonstrate that these materials must be protected in order to safeguard the agency's deliberative process. The TSA is entitled to summary judgment on these exemption 5 claims.

### C.  Operational Test Plan for Operational Test and Evaluation

Finally, TSA also withheld parts of the Appendix to the Operational Test Plan for Operational Testing and Evaluation for ATR, Bates Numbers 484–617; Soutodeh Decl. ¶ 40. This document "describes the proposed testing methodology to be used in pilot testing of . . . ATR."  Soutodeh Supp. Decl. ¶ 12.  "The purpose of the Test and Evaluation (T&E) effort is to provide credible, timely, and sufficient information *to support the evaluation of the effectiveness and suitability* of the Advanced Imaging Technology . . . system with . . . ATR." *Id.*  The testing proposal was submitted by TSA to DHS's Office of Testing and Evaluation for review, deliberation and ultimately for approval by DHS.  Soutodeh Decl. ¶ 40.   The field testing proposed in this document was ultimately approved, but the testing itself was implemented in order to assist with deliberations regarding "the ultimate question of whether to pursue the technological upgrade or enhancement." Soutodeh Supp. Decl. ¶ 12.

TSA made fourteen sets of exemption 5 withholdings from this document.  *See* Table 3.

### TABLE 3

| BATES NUMBER | DESCRIPTION FROM *VAUGHN* INDEX | PAGES WITHHELD |
|---|---|---|
| 490 | Description of proposed testing process for upcoming operational testing; discussion of vendor capability requirements; reference and table revealing security screening requirement and rationale | 1 page partially withheld |
| 493–494 | Discussion of opinion about purpose and need for . . . ATR. | 1 page partially withheld; 1 page withheld in full |
| 495–500 | Planned operational testing schedule and activity plan revealing framework and though [*sic*] processes on how to test security equipment; discussion of additional testing goals | 6 pages partially withheld |
| 501 | Discussion of overall testing methodology to be deployed; discussion of planned testing of specific threats; Data collection methods to be deployed including security screening techniques; proposed testing schedule | 1 page partially withheld |
| 503 | Proposed testing features and criteria, testing data collection methodology | 1 page partially withheld |

| 504–514 | Planned testing evaluation methodology | 11 pages partially withheld |
| 515–536 | Proposed testing objective/issue, testing criteria and source of specific requirement to be tested; Provides operational testing data collection methodology; data analysis methodology | 22 pages withheld in full |
| 539 | Planned testing data review designations | 1 page partially withheld |
| 541 | Planned scoring criteria for operational testing criteria | 1 page partially withheld |
| 548–550 | Planned sensitive operational testing criteria | 3 pages partially withheld |
| 551–558 | Screen shots of planned operational testing data collection forms | 3 pages withheld in full; 5 pages partially withheld |
| 562 | Discussion of proposed authentication codes and purpose | 1 page partially withheld |
| 566–616 | Discussion of each specific performance requirement planned to be tested; planned testing criterion or measure, planned operational testing measure of performance, and comments | 51 pages partially withheld |
| 617 | Discussion of proposed testing articles | 1 page withheld in full |

EPIC alleges that TSA wrongly withheld purely factual material from these documents. *See* Pl.'s Opp'n 18. Again, the Court disagrees.

The TSA's Statement of Facts Not in Genuine Dispute, the TSA declaration, and the *Vaughn* Index all describe these documents in sufficient specificity to demonstrate terms that qualify for the privilege. *See, e.g.*, Def.'s Statement ¶ 73; Soutodeh Decl. ¶ 40; *Vaughn* Index 17–19. Again EPIC offers no reason to dispute the deliberative nature of these documents. The Court finds that these materials must be protected as deliberative. It follows that whether or not some of the material withheld was "purely factual" is of no moment because this factual material was critical to the agency's deliberative process in determining whether to implement ATR. Allowing the public to "probe" this factual information, therefore, "would be the same as probing the decision-making process itself." *Montrose*, 491 F.2d at 68. The Court will grant TSA summary judgment on these claims.

### D.  EPIC'S Other Arguments for Disclosure All Fail

EPIC's assertion that some of the withheld information reviewed above was post-decisional, and thus was improperly withheld pursuant to exemption 5, is incorrect.  Pl.'s Reply 9–10.  EPIC points to two statements: first, TSA's description of one document as containing "what the staff decided to test for, how it decided to carry out these tests"; and second, TSA's description of another document containing "TSA's decisions regarding what to test for reveals which factors it thought (at an early stage) were important in the decision whether to use ATR." *See id.* (quoting Def.'s Reply 14, 16).  EPIC argues that "[a]t some point this information was pre-decisional, but it does not remain predecisional after the tests have been completed."  Pl.'s Reply 9.  This evinces a misunderstanding of the deliberative process privilege.  As the Supreme Court has explained:

> The purpose of the privilege for predecisional deliberations is to insure that a decisionmaker will receive the unimpeded advice of his associates. The theory is that if advice is revealed, associates may be reluctant to be candid and frank. It follows that documents shielded by executive privilege remain privileged even after the decision to which they pertain may have been effected, since disclosure at any time could inhibit the free flow of advice, including analysis, reports, and expression of opinion within the agency.

*Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 359–60 (1979); *see also Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,* 384 F. Supp. 2d 100, 112–13 (D.D.C. 2005) ("Contrary to plaintiff's assertion that materials lose their exemption 5 protection once a final decision is taken, it is the document's role in the agency's decision-making process that controls.").  True, the agency has "the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).  Here, as explained

above, TSA has met this burden by demonstrating that each of these documents was part of the agency's deliberative process in determining whether to use ATR.

EPIC's assertion that TSA failed to produce segregable portions of the withheld documents also fails.  *See* Pl.'s Opp'n 19–20.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  According to the *Vaughn* Index provided by the agency, most of the contested withholdings under exemption 5 were partial redactions from specific pages, rather than complete withholdings of entire documents.  *See Vaughn* Index 13–14, 17–19.  Moreover, the agency has declared in a sworn affidavit that it has released the segregable portion of each of these records.  Soutodeh Decl. ¶ 55.  As EPIC has failed to offer any argument in support of its allegation that might cast doubt on TSA's sworn statement, the Court finds that all reasonably segregable materials were disclosed.

## VI.  ATTORNEYS' FEES AND COSTS

EPIC has moved for attorneys' fees and costs.  Pl.'s Opp'n 20–24.  The Court will not address that motion here.  Pursuant to the local rules, the Court shall "enter an order directing the parties to confer and to attempt to reach agreement on fee issues" and shall set a status conference at which the Court will

> (1) determine whether settlement of any and or all aspects of the fee matter has been reached, (2) enter judgment for any fee on which agreement has been reached, (3) make the determination [regarding pending appeals] required by paragraph (b) of . . . [LCvR 54.2], and (4) set an appropriate schedule for completion of the fee litigation.

LCvR 54.2.

**VII.    CONCLUSION**

For the foregoing reasons, EPIC and TSA are both entitled to partial summary judgment.

An Order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on March 7, 2013.